## Case No. 4,298.

EDWARDS et al. v. SHERMAN.

[Gilp. 461.][1]

District Court, E. D. Pennsylvania. May 29, 1834.

---

[1] [Reported by Henry D. Gilpin, Esq.]

Mr. Randall, for the libellants.

J. R. Ingersoll, for the respondent:

J. R. Ingersoll, for the respondent, in reply.

HOPKINSON, District Judge. The law of this district upon the subject of a loss of a part of the cargo or other articles from the ship, I have thought exceedingly severe, and indeed unjust to the crew. It is, as far as I know, peculiar to this district, and goes far beyond the doctrine of the courts of England, and exceeds that of other districts of the United States. It seems to me to. impose a liability on a sailor, not warranted by his contract, which assuredly binds him to a faithful performance of his own duty, but does not make him the surety for all and each of a crew, who are perhaps absolute strangers to him, and who are brought on board the vessel without his act, acquiescence or knowledge. It is converting a ship's company into a novel kind of partnership, in which each one is made answerable, nolens volens, for the acts and crimes of any and all the rest, and this without his having any choice or agency in the selection of his companions. This dangerous responsibility for the honesty of every man on board is imposed upon him, it is said, for

reasons of policy. If it be so, it should be so declared in his contract; it should be made a part of it, and he should distinctly understand that he is not only to be answerable for his own honesty and the full and faithful discharge of his duty, but to make good the losses, which may happen on board the vessel by the fraud or negligence of others; nay that the burden of proof is thrown upon him, to show that the embezzlement was committed by persons not of the crew. If neither he nor any body else knows how the loss happened, nor, if by embezzlement, by whom the fraud was committed, he is to stand answerable for it, to whatever sum his proportion may amount. Such is the law as laid down in the case of The Kensington [supra]. The reason is not that any such undertaking is found in the contract of the seaman, but in the policy of the law. The same policy would apply to a number of persons employed in an extensive manufactory; where there are the same opportunities to pilfer, the same inducements to fraudulent combinations, and the same reason, if there be any, to presume that they are acquainted with each other's doings. If a sailor is thus to be made the insurer for all the property on board against embezzlement; and, more than this, if he takes upon himself to prove how and by whom the loss was occasioned, before he can throw the burden from himself, he ought to have an adequate premium, an addition to his wages for this extraordinary risk. His wages pay him only for his labour and services.

In the case of the Kensington, the amount of wages was not disputed, but the seamen were charged with a sum, for a loss to the ship, in consequence of the embezzlement of part of a box of cambrics and lawns. It appeared, from circumstances, that the embezzlement took place at the time of lading the ship at Liverpool, though it was not discovered until she was unlading at Philadelphia. Several persons, not of the crew, were hired to assist in stowing the vessel at Liverpool; these had the part of the cargo assigned to them to stow, of which the plundered box composed an article; but the mate and some of the crew were always with them, and the box was in a situation to admit the access of the crew, as well those who assisted the labourers, as any others of the seamen. The box was much injured and broken open with a crow bar or some such instrument, probably used at the time of storage. In that case the crew were ordered to make good the loss by a general contribution. The learned judge, in making this decree, says, "If it could be proved, that the labourers committed the embezzlement, without the participation, connivance, or knowledge of the mariners, the latter would not be bound to contribute." And this proof is to be made by the mariners, whose answer and defence denies all such participation, connivance, and knowledge, which, in the ordinary course of legal proceedings, would throw the proof back upon those who would charge them with it. The mariners are to prove that they did not participate; that they did not know or connive at the fraud; and more than this, they must prove who were the offenders; "if it could be proved that the labourers committed the embezzlement;" and further, that it was without their participation. It is true, the judge agrees that if it were proved to have been done by the labourers, he would not consider the mariners liable for them as part of the crew. The judge then distinctly states, "that there is no doubt but that the seamen are answerable for embezzlement, unless they can clearly show, either by positive evidence, or strong circumstances, that it was committed by persons not of the crew. It is," he adds, "impossible for me to say who committed the act in question, in this case; it may have been either a separate or a joint act; it may have been perpetrated by the labourers alone, or in company with some of the crew; but under the uncertainty, I think the law throws the burden of proof on the mariners." To the law, as thus laid down, I cannot assent. It does not, in my opinion, conform to the general principles of jurisprudence; of right and wrong between man and man; nor to the adjudications of other courts on the subject. No case is cited by the learned judge, or by the counsel of the respondent, to support this doctrine. The law of the English courts is thus given, in Judge Story's last edition of Abbott on Shipping (page 472): "If the cargo be embezzled, or injured by the fraud or negligence of the seamen, so that the merchant has a right to claim a satisfaction from the master and owners, they may, by the custom of merchants, deduct the value thereof from the wages of the seamen, by whose misconduct the injury has taken place." Alluding then to the proviso introduced into the agreement made with the seamen, which, he says, is calculated to enforce the rule he has mentioned in the case of embezzlement, either of the cargo or the ship's stores, he adds, "this proviso, however, is to be construed individually, as affecting only the particular persons guilty of the embezzlement, and not the whole crew. Nor, as it seems, is any innocent person liable to contribute a portion of his wages, to make good the loss occasioned by the misconduct of others." This appears to me to be the real justice of the case, administered to seamen, as it is administered to others. In the first place, before the master and owner can throw upon the mariners the responsibility which the law throws upon them, the embezzlement or loss must be by the fraud or negligence of the seamen; and, of course, is a fact to be proved either by direct, or satisfactory circumstantial evidence. This being done, the deduction is to be made "from the wages of the seamen by whose misconduct

the injury has taken place," which is another fact to be proved by the master or owner; "but no innocent person is to make good the loss occasioned by the misconduct of others."

The learned editor of the American edition of this work, in a note appended to the paragraph quoted, says: "This may be justly stated as the generally received law in the courts of America. Some cases have been decided, in which all the seamen have been held liable to contribution for embezzlement, where there is no reason to impute to them any participation in the act of plunder." He then refers to the case of Crammer v. The Fair American [Case No. 3,347], in which Judge Peters ruled, that "no one is to be excused from the general contribution, though absent from the ship, and not in a situation to be capable of assisting in the plunder." "The innocence of an individual is not the question, it turns on the joint obligation of all to make retribution." He also refers to the case of the ship Kensington, already noticed; to a manuscript case in the Massachusetts district, which I have not seen; and to the case of Sullivan v. Ingraham [Id. 13,- 595]. In this last case Judge Bee does not adopt the principle of Judge Peters, although he goes beyond the English rule. He says, "The general doctrine is, that all are answerable," but that "the court will always endeavour to distinguish between the innocent and the guilty." And he acquitted two of the crew from liability upon presumptive proof that, although on board the vessel, they were not concerned in the embezzlement. The learned annotator further says, that the doctrine in the text was held to be the correct doctrine in the case of Lewis v. Davis, 3 Johns. 17. In that case a bale of goods was shipped at Bayonne; the vessel arrived at New York, direct from that place, on the 17th of October. On the 18th she came to the wharf, and on the 19th the goods were missing. The crew went on shore on the 18th; and returned on board on the 19th. On the night between the 18th and 19th, the fore scuttle was broken open. It was not pretended that any of the crew were concerned in the robbery. Kent, C. J., delivered the opinion of the court: "Admitting the rule of the maritime law to be, that mariners are to contribute out of their wages to the damages arising from embezzlement by each other, during the voyage, yet if negligence be not imputable to them, and the circumstances of the case do not fix the presumption of embezzlement upon any of the crew, they ought not to contribute." We see here that the preliminary step is to show that the embezzlement was done by the crew or some of them; negligence must be imputable to them; the circumstances of the case must fix the presumption upon the crew or some of them. This is entirely different from the rule of Judge Peters, who fixes the presumption on the crew, prima facie, and throws it upon

them to disprove it. Chief Justice Kent proceeds, "The loss ought, in justice, to attach upon the person, to whom the care of the vessel was committed for the night." "Molloy does not state the rule on this subject, with much precision, nor is he of much authority; but he rather seems to place it upon the ground of fault or negligence in the mariners. And even to the limited extent, to which he carries it, in this instance, has been recently questioned or denied by the court of common pleas in the case of Thompson v. Collins, 1 Bos. & P. (N. R.) 347, who were inclined to think that each person ought to answer for his own default. On the other hand, the mutual responsibility of seamen has been carried to a greater extent in the decrees of the district court of Pennsylvania; and further, I apprehend, than in any of the marine ordinances annexed to the reports of those respectable decisions. Assuming, however, the rule to the extent, in which it is laid down in Molloy, it is sufficient that the facts, in this case, did not lead to the conclusion that the plaintiff below was chargeable with fault or negligence, or that the embezzlement was to be imputed to any of the crew."

The case of Thompson v. Collins [supra], referred to Chief Justice Kent, was a suit for wages as a sailor. The facts were, that the ship sailed from Jamaica with several pipes of wine on board, stowed in the fore part of the ship. In the course of the voyage the partition was broken down, by some of the crew, but by whom could not be ascertained. Six of the casks were plugged by some of the crew, but it was not proved that the plaintiff was concerned in the transaction. A deficiency was found in the contents of the casks, of one hundred and sixty-two gallons. The defendant, the owner, paid all the other men their wages, deducting their proportional value of the wine lost. The question was, whether the plaintiff was entitled to recover. The defendant relied upon the words of the act of parliament, "that each seaman and mariner, who shall well and truly perform the above mentioned voyage, (provided always that there be no plunderage, embezzlement, or other unlawful acts committed on the said vessel's cargo or stores,) shall be entitled, &c." The court held that these words must be construed respectively to every sailor, who shall plunder, embezzle, or commit an unlawful act. It is proper to say that this was a decision upon the construction of the act of parliament, and a clause in the shipping articles in conformity with it, which forfeited the wages in the cases mentioned, and our shipping articles contain the same clause, but not upon the maritime law authorising a deduction from the wages of every seaman in case of embezzlement. That question is not, it is true, decided by the court, but Chief Justice Mansfield, after declaring that there is no foundation for a forfeiture

of the whole wages, adds, "And I suspect that there is as little for a proportionable deduction; for notwithstanding what is said in Molloy, if such be the rule of law, it is scarcely possible but that it must have been often mentioned in the books, and as well known as any rule of maritime law, since frequent occasions must have arisen for the application of it." The annotator (Judge Story) also says that the English doctrine was adopted and followed in the case of Spurr v. Pearson [Case No. 13,268], which, being his own decision, he cannot be mistaken as to its intention. The learned judge goes into a thorough examination of the subject with his usual ability. His argument is so condensed, that an analysis cannot be made of it without injury to the whole. I shall therefore content myself with giving the result in his own words: "Upon the whole, my opinion is, that the rule of contribution, as contended for at the argument, and as asserted by Valin, cannot be sustained as a general rule of maritime law; that it has not that general sanction or universal use which entitles it to such a consideration; and that it has not such intrinsic equity or justice, as that, in the absence of direct authority, it ought to be adopted as a limit upon judicial discretion. On the contrary, it seems to me, that the true principles, which are to govern in these cases, are those of the general contract of hire; and that the most, that the maritime law has done, is to enforce these principles, by allowing the owner and master to make an immediate deduction from the wages of the offending parties, instead of driving them to the circuity of an action for damages. The result of this opinion is, that where the embezzlement has arisen from the fault, fraud, connivance, or negligence of any of the crew, they are bound to contribute to it, in proportion to their wages; but when the embezzlement is fixed on an individual, he is solely responsible; that where the embezzlement is clearly shown to have been made by the crew, but the particular offenders are unknown, and from the circumstances of the case, strong presumptions of guilt apply to the whole crew, all must contribute; but that where no fault, fraud, connivance, or negligence is proved against the crew, and no reasonable presumption is shown against their innocence, the loss must be borne exclusively by the owner or master; that in no case is the innocent part of the crew to contribute for the misdemeanours of the guilty; and further that in case of uncertainty, the burthen of the proof of innocence does not rest on the crew; but the guilt of the parties is to be established beyond all reasonable doubt, before the contribution can be demanded."

While I think that the learned judge presses sufficiently hard upon the sailor, and scarcely places his contract upon the principles of "the general contract of hire," I cannot deny that there is in his opinion a combination of good sense, natural justice, and sound law, with as much of commercial policy as justice will bear, which I am willing to abide by. If then we test the case before us by these principles, to what result will they bring us? It is uncertain, in the first place, what amount of dollars was in the bags, more especially in the large ones. I do not mean to intimate any fraud or improper design in this respect; but mistake is not improbable. There was evidently great carelessness in putting it up; it was probably done in haste. The bags were so loose and open, that the money might have been picked out of them, before they were taken to the vessel, or left the store for that purpose. They were carried about a quarter of a mile, and the missing money may have dropped out. In short, it is impossible to say where or how these dollars were lost. When the bags came on board the vessel, they were put in the run; to which there was no fastening. The steward, a stranger, not one of the crew, had constant access to it. No one of the crew was seen to go to the run, and they could not after the vessel sailed. There is, in truth, no one circumstance of suspicion or presumption against the crew; except that the money is lost, and no one knows what has become of it; no one pretends to know who took it, if the supposed amount was really put into the bags. Without a recurrence to the principles adopted in the case of Spurr v. Pearson, just recapitulated, it is most manifest, that they would not afford the least warrant for charging the libellants with this loss.

Decree. That the libellants recover and have paid to them their wages, without any contribution or deduction on account of the loss alleged by the respondent.